UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
Eleanor WILTSHIRE, et al.,                         :
                                                   :
                        Plaintiffs,                :          **OPINION AND ORDER**
                                                   :
          -against-                                :          03-CV-2856 (DLI)(VVP)
                                                   :
Edward DHANRAJ, et al.,                            :
                                                   :
                        Defendants.                :
----------------------------------------------------------x

**DORA L. IRIZARRY, U.S. District Judge:**

Edward Dhanraj has been involved in the purchase, renovation, and resale of houses from about 1993.[1] Beginning in December 2000, Dhanraj, through Lotus Enterprises, Inc. ("Lotus Enterprises") and Quest Properties, Inc. ("Quest"), built and/or sold seven new homes to the sixteen plaintiffs, all of whom are minorities and first-time home buyers. Various other persons were involved in the sale of the homes as well. Tricia Dhanraj, Dhanraj's wife, assisted in the transactions by signing certain documents. Paula Celemin ran Lotus Funding, Inc. ("Lotus Funding"), which brokered all the mortgages, and Park Lane Enterprises, Inc. ("Park Lane"), which purportedly obtained building permits for some of the homes. Dhanraj's brother, Danny Dhanraj, showed the homes to the buyers. As a condition of sale, the Seller Defendants[2] required that the buyers use Wells Fargo Home Mortgage, Inc. ("Wells Fargo"), its subsidiary Crossland Mortgage Corp. ("Crossland"), or Village Abstract of NY, Inc. ("Village Abstract") to finance their loans. This litigation concerns various misrepresentations allegedly made by the Seller Defendants and

---

[1] Unless otherwise noted, all facts are taken from Plaintiff's Memorandum of Law In Opposition to Motion to Dismiss the Amended Complaint (Plaintiff's Mem.).

[2] The "Seller Defendants" are Dhanraj, Lotus Enterprises, Quest, Tricia Dhanraj, Paula Celemin, Lotus Funding, Park Lane, and Danny Dhanraj.

other defendants purportedly acting in concert with them.

Plaintiffs' Amended Complaint alleges claims under federal law for violations of the Fair Housing Act, 42 U.S.C. §§ 1981, 1982, 1985, and 1986, the Equal Credit Opportunity Act, and the Racketeer Influenced and Corrupt Organizations Act and claims under New York State law for violations of the New York City and State Human Rights Laws, the New York General Business Law, breach of contract, breach of express warranty, breach of warranty of habitability, and unjust enrichment. Presently before the court is the Dhanraj Defendants'[3] motion to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and Wells Fargo and Crossland's motion to dismiss counts 6, 11, and 15 of the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), or, in the alternative, for summary judgment. For the reasons discussed below, all of plaintiffs' federal claims are dismissed pursuant to Fed. R. Civ. P. 12(b)(6). In addition, the court declines to exercise supplemental jurisdiction over the remaining state law claims. Accordingly, plaintiffs' state law claims are dismissed without prejudice to refiling in state court.

**I.     The RICO Claims**

Plaintiffs' Amended Complaint and RICO statement alleges violations of 18 U.S.C. § 1962(a), (b), (c), and (d). The RICO statute

> renders criminally and civilly liable 'any person' who uses or invests income derived 'from a pattern of racketeering activity' to acquire an interest in or to operate an enterprise engaged in interstate commerce, § 1962(a); who acquires or maintains an interest in or control of such an enterprise 'through a pattern of racketeering activity,' § 1962(b); who, being employed by or associated with such an enterprise, conducts or participates in the conduct of its affairs 'through a pattern of racketeering activity,' § 1962(c); or, finally, who conspires to

---

[3]     The "Dhanraj Defendants" are Edward Dhanraj, Tricia Dhanraj, Danny Dhanraj, Paula Celemin, Lotus Funding, Inc., Lotus Enterprises, Inc., Castlewood Estates, Inc., Quest Properties, Inc., Lodovick Development Corp. and Park Lane Enterprises, Inc.

violate the first three subsections of § 1962, § 1962(d).

*H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 232-33, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989).

The purpose of the RICO statute is to protect "legitimate businesses from infiltration by organized crime." *United States v. Porcelli*, 865 F.2d 1352, 1362 (2d Cir.1989).

> The basic purpose of section 1962(a) was to prevent racketeers from using their ill-gotten gains to operate, or purchase a controlling interest in, legitimate businesses. The purpose of section 1962(b) was to prohibit the takeover of a legitimate business through racketeering, typically extortion or loansharking. Section 1962(c), the most often charged RICO offense, was intended to prevent the operation of a legitimate business or union through racketeering.

*Mark v. J.I. Racing, Inc.*, 1997 WL 403179, at *3 (E.D.N.Y.) (*quoting* David B. Smith & Terrance G. Reed, Civil RICO, ¶ 5.01, at 5-2 (1997)). As explained below, plaintiffs have not stated a RICO claim here.

A.   Plaintiffs' Section 1962(a) Claim

In order to state a claim under section 1962(a), plaintiffs must allege injury "'by reason of defendants' investment of racketeering income in an enterprise,' as distinct from injury traceable simply to the predicate acts of racketeering alone or to the conduct of the business of the enterprise." *Ideal Steel Supply Corp. v. Anza*, 373 F.3d 251, 264 (2d Cir. 2004) (quoting *Ouaknine v. MacFarlane,* 897 F.2d 75, 82-83 (2d Cir.1990)). Put another way, plaintiffs must allege that defendants engaged in racketeering activity, derived income therefrom, invested that income in an enterprise, and, as a result of that investment, caused injury to the plaintiffs.

Plaintiffs' allegations relevant to the section 1962(a) claim are as follows: Prior to the first plaintiff purchasing his home from the Seller Defendants, defendants sold fourteen homes to various

individuals who are not plaintiffs. In connection with these sales, plaintiffs contend that the previous buyers "utilized the services of certain defendants which acts were the basis as a predicate act under [RICO]." (Am. Compl. ¶¶ 690-702.) Defendants allegedly then used the proceeds of these sales to invest in the racketeering scheme that is the subject of the complaint.

While the precise meaning of "utiliz[ing] the services of certain defendants which acts were the basis as a predicate act under [RICO]," is unclear, plaintiffs appear to suggest there was something nefarious about the sales of the fourteen homes that predate the sales to plaintiffs. Whether true or not, plaintiffs' allegations in this regard are insufficient to state a predicate act under RICO. 18 U.S.C. § 1961(1) sets forth specifically which acts may serve as predicates for a RICO violation. At the very least, defendants are entitled to know which of these they have committed in generating the income that was then used to fund the scheme that purportedly injured plaintiffs. Absent such specificity, plaintiffs' allegation that selling a house constitutes "racketeering activity" fails as a matter of law.[4] For this reason, plaintiffs' claim under section 1962(a) fails.

Plaintiffs' reliance on *Ideal Steel Supply Corp. v. Anza, supra* as their sole support for the sufficiency of their complaint is misplaced. In *Ideal Steel*, the plaintiff, a reseller of steel mill products, commenced a RICO action against the owner of a competitor alleging that the competitor's unlawful failure to charge and collect sales tax constituted predicate acts under RICO. *Ideal Steel*, 373 F.3d at 254-55. Some of the proceeds of these predicate acts were then used to open a new

---

[4] Courts in this district have generally held that Fed. R. Civ. P. 9(b)'s heightened pleading requirement governs civil RICO complaints alleging predicate acts of mail fraud, wire fraud, and bank fraud. *See Morrow v. Black*, 742 F. Supp. 1199, 1203 (E.D.N.Y. 1990) (discussing pleading requirements for predicate acts of mail fraud and wire fraud). "In order to satisfy the particularity standard set forth in Rule 9(b), a plaintiff's complaint must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.' *Leung v. Law*, 2005 WL 1377956, at *3 (E.D.N.Y.) (quoting *Anatian v. Coutts Bank (Switz.) Ltd.*, 193 F.3d 85, 88 (2d Cir.1999) (citations omitted)).

4

facility that caused plaintiff to lose business and market share. *Id*. The Second Circuit held that the plaintiff had adequately pled a RICO claim under sections 1962(a) and (c).

Two aspects of *Ideal Steel* are arguably relevant to the instant matter. First, the primary victim of the predicate acts in *Ideal Steel* (non-payment of sales-tax) was not the plaintiff, but the State of New York. Second, the proceeds of the alleged scheme were used to open up another facility for the same business, and thus can arguably be characterized as closer to a "reinvestment" of racketeering income in a pre-existing enterprise than the introduction of racketeering proceeds into an otherwise legitimate entity. Most significantly, however, the scheme in *Ideal Steel* which generated the revenue at issue, unlike the alleged scheme in the present case, unquestionably involved racketeering activity, to wit, mail and/or wire fraud. *Id*. at 255; 18 U.S.C. § 1961(1)(B) (defining mail and wire fraud as "racketeering activity"). *Ideal Steel* is therefore inapplicable.

The above notwithstanding, the court disagrees with defendants' argument that "the fact that none of [the individuals who purchased homes predating the first sale to a plaintiff] are plaintiffs here and that Plaintiffs are relying on these transactions as necessary predicate acts should cause the Court to disregard these allegation in any event." (Dhanraj Defs.' Mem.at 13.) *Ideal Steel* makes clear that plaintiffs need not be the intended primary victim of the predicate racketeering acts so long as the complaint "contains allegations of facts to show that the defendants engaged in a pattern of fraudulent conduct that is within the RICO definition of racketeering activity and that was intended to and did give the defendant a competitive advantage over the plaintiff." 373 F.3d at 263. While in *Ideal Steel* the primary victim of the sales tax avoidance scheme was the State of New York, the defendants' failure to charge sales tax also enabled them to undercut plaintiff's prices, thereby depriving plaintiff of business. Here, plaintiffs cannot even allege that they were secondary, tertiary,

5

or distant victims of the sales of homes that predated the first sale to a plaintiff. Thus, plaintiffs' problem here is twofold: (1) the sales of homes that predated the first sale to a plaintiff do not constitute racketeering activity; and (2) even if those sales did constitute racketeering activity, plaintiffs fail to allege how they were harmed by them.

### B. Plaintiffs' Section 1962(b) Claim

Plaintiffs section 1962(b) claim fails for the same reason. Section 1962(b) prohibits the takeover of legitimate businesses through racketeering activity. *Mark v. J.I. Racing, Inc., supra*. Plaintiffs have not alleged that defendants obtained an interest in any businesses or properties subsequently used to injure them through racketeering. Plaintiffs have therefore failed to state a claim under 18 U.S.C. § 1962(b).

### C. Plaintiffs' Section 1962(c) Claim

"To establish a claim for a civil violation of section 1962(c), 'a plaintiff must show that he was injured by defendants' (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 242 (2d Cir. 1999) (quoting *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 520 (2d Cir. 1994)). A pattern may be established by a showing that the predicate acts of racketeering activity "are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). Continuity may be either closed-ended or open-ended. *See id.* at 241. Consistent with plaintiffs' scattershot approach to pleading thus far, plaintiffs have alleged both types of continuity in the most conclusory fashion. (Am. Compl. ¶¶ 703–04.)

### 1. Closed-Ended Continuity

Continuity is "centrally a temporal concept." *H.J.*, 492 U.S. at 241–42. To establish closed-ended continuity, the plaintiff must prove a series of related predicate acts extending "over a substantial period of time." *Id.* at 242. "Since the Supreme Court decided *H.J., Inc.*, [the Second Circuit] has never held a period of less than two years to constitute a 'substantial period of time.'" *DeFalco v. Bernas*, 244 F.3d 286, 321 (2d Cir. 2001) (collecting cases). The Amended Complaint's nineteen-month period of predicate activity is therefore insufficient under Second Circuit precedent to establish closed-ended continuity.

Plaintiffs' attempt to extend the period of predicate activity by bootstrapping defendants' sales of homes that predate the first sale to a plaintiff meets the same fate here as it did with respect to plaintiffs' section 1962(a) and (b) claims. Plaintiffs have alleged nothing about these sales that meets the definition of "racketeering activity" as set forth in section 1961(1) and therefore cannot include these sales for purposes of satisfying RICO's temporal requirements.[5] *Id.* ("The duration of a pattern of racketeering activity is measured by the RICO predicate acts the defendants commit."); *GICC Capital Corp. v. Technology Finance Group, Inc.*, 67 F.3d 463, 467 (2d Cir. 1995) (acts that do not constitute predicate racketeering activity are not included in continuity analysis)

---

[5] The insufficiency of these allegations is self-evident. Plaintiffs state only that "[o]n or about October 8, 2003, JOGINDER WALIA, purchased a home located at 120-05 97th Avenue, Richmond Hills, Queens, New York 11419 from defendant EDWARD DHANRAJ. This was a predicate act as set forth in the Amended complaint." Pls.' Mem. at 51. Taking this statement at face value, the court would be very surprised to learn that Congress had declared selling a home to be racketeering activity. Moreover, this statement is so conclusory, and the reference to the Amended Complaint so vague, as to call to mind the Seventh Circuit's statement, "Judges are not like pigs, hunting for truffles buried in briefs." *U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). The same can be said of pleadings. Memoranda of law are submitted precisely to relieve the court of the burden of scouring an entire record (particularly one that contains a 169-page complaint) in search of an argument, sentence, or turn of phrase that will save the day for one litigant. Arguments are to be pressed before the court, not found by the court after a labor-intensive search through a voluminous record.

2. Open-Ended Continuity

> To satisfy open-ended continuity, the plaintiff need not show that the predicates extended over a substantial period of time but must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed. In assessing whether or not the plaintiff has shown open-ended continuity, the nature of the RICO enterprise and of the predicate acts are relevant. Where the enterprise is engaged primarily in racketeering activity, and the predicate acts are inherently unlawful, there is a threat of continued criminal activity, and thus open-ended continuity. However, where the enterprise primarily conducts a legitimate business, there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity.

*Cofacredit*, 187 F.3d at 242–43.

Plaintiffs' sole argument in favor of open-ended continuity is contained in paragraph 688 of the Amended Complaint, which states, "Upon information and belief, Seller Defendants are continuing to operate their business and continue to sell homes and offer for sale, homes to individuals and Defendants continue to operate this Racketeering Enterprise within the Eastern District of New York, continuing to build, construct, sell, [sic] offer for sale homes presently being constructed at [5 separate addresses in Brooklyn and the Bronx]." "This," plaintiffs argue, "is open ended continuity." (Pls.' Mem. at 52.)

This is not open-ended continuity. Plaintiffs do not contest that the Seller Defendants conduct a primarily legitimate business. Thus, "there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity." *Cofacredit*, 187 F.3d at 243. That the Seller Defendants continue to build and sell homes, without more, does not suggest that they continue to engage in racketeering activity.

8

Plaintiffs cite no case indicating that defendants' continued participation in the real estate industry, standing alone, is sufficient to support a finding of open-ended continuity. In *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 521 (2d Cir. 1994), the Second Circuit held that plaintiffs had articulated a threat of continued criminal activity by virtue of the fact that defendants were continuing to offer to sell securities based on the same alleged misrepresentation that formed the basis of plaintiffs' complaint. This differs from the present case because plaintiffs allege only that defendants continue to participate in the real estate business. There is no allegation here that the homes Seller Defendants presently offer suffer from the same deficiencies as plaintiffs' homes, or, for that matter, any deficiencies at all.

The last sale to a plaintiff took place on July 1, 2002—almost a year prior to the filing of the initial complaint. Defendants' failure to commit any predicate acts of racketeering for nearly a year severely undercuts any claim of a continuity. Moreover, there is no allegation that the predicate acts themselves imply a threat of continued criminal activity. *Cf. DeFalco*, 244 F.3d at 324 (finding that the defendants' continued and escalating extortionate demands supported the inference that defendants "had no intention of stopping once they met some immediate goal.").

The alleged scheme requires the participation of various individuals such as real estate appraisers, mortgage brokers, and lending institutions. Specifically, the Amended Complaint claims that the Seller Defendants were able to bribe certain appraisers, mortgage brokers, and employees of lending institutions into signing off on loans for poorly constructed homes. Neither the Amended Complaint nor the RICO Statement contains any reason to believe that these relationships, so vital to the carrying out of the scheme, still exist. (*See* Pls.' Mem. at 10 ("Dhanraj assembled an enterprise, in which the elements and participants were like spokes in a wheel. If the spokes broke

9

(or refused to participate), then the entire enterprise would have collapsed.")) Rather, plaintiffs allege merely that defendants continue to build and sell homes. This fact, together with the absence of any allegations of racketeering activity for a year prior to the filing of the complaint, indicates that the conduct at issue is more episodic than continuous. Because Plaintiffs have not alleged closed or open-ended continuity, they have failed to adequately allege a pattern of racketeering activity. Plaintiffs have therefore failed to state a claim under 18 U.S.C. § 1962(c).

    D.    Plaintiffs' Section 1962(d) Claim

Plaintiffs' section 1962(d) claim fails because the substantive RICO claims fail. *See Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1064 (2d Cir. 1996) (citing *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993) ("Any claim under § 1962(d) based on conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient.")).

## II.    The Discrimination Claims

    A.    Fair Housing Act Claim

Plaintiffs claim that defendants violated the Fair Housing Act ("FHA"). 42 U.S.C. § 3604(b) prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." Section 3605(a) makes it unlawful for anyone "whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national

origin."[6] It is undisputed that the transactions at issue are covered by the FHA. Instead, defendants argue that plaintiffs' claims fail because they have not articulated any action taken by them *because of* plaintiffs' race, color, or national origin. The court agrees.

Plaintiffs' theory of discrimination is as follows:

> Because of the plaintiffs' race, color and/or national origin, the defendant sellers (The Dhanraj defendants) pressured or coerced the plaintiffs to use Wells Fargo . . . to provide the financing for their homes. (Amended complaint ¶ 24) [sic] because Wells Fargo would close on the plaintiffs' homes without a certificate of occupancy (Amended complaint ¶ 25). Wells Fargo knew that the homes were not 100% complete at the time of closing (Amended complaint ¶ 28). The Dhanraj defendants concealed their identity and affiliation with Lotus Funding Inc., the mortgage broker entity owned by Edward Dhanraj (Amended complaint ¶ 63). The Dhanraj Defendants required that the plaintiffs use attorneys to represent the plaintiffs in the purchase of their homes from the Dhanraj defendants which attorneys were recommended by the Dhanraj Defendants or their agents as the Sellers of the homes. The amended complaint alleges that the Defendants lured inexperienced and lower middle income minority buyers into purchasing homes that they could not afford and that: (a) were intentionally overpriced and over-appraised by as much as fifty percent (50%) above the actual value of the home; (b) have mortgage and/or property tax payments that were dramatically higher than represented and expected, (c) were defectively built; (d) were unlawful to reside in due to lack of [a] certificate of occupancy and (d) were deprived of real estate tax abatements due to failure to obtain a certificate of occupancy for each home. (Amended complaint ¶319).

Pls.' Mem. at 55–56. Aside from the first sentence, nothing in the above quoted paragraph even suggests racial or national origin discrimination. Rather, the allegations suggest that defendants sold defective homes to unsophisticated persons, regardless of their ethnicity, in order to perpetuate a

---

[6] Plaintiffs state in their Memorandum of Law that "[t]he provisions of 42 U.S.C. § 3604, et seq. that the Dhanraj Defendants and Wells Fargo Home Mortgage Inc. violated were the prohibition that it is unlawful to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction." Pls.' Mem. at 54.

fraud.

As for the first sentence, which purportedly appears in paragraph 24 of the Amended Complaint, paragraph 24 actually states

> The Seller Defendants and Defendants [Wells Fargo and Crossland,] which upon information and belief is and was a subsidiary of WELLS FARGO, and Village Abstract[] conspired to form a racketeering enterprise by pressuring or coercing some or all of the plaintiffs to utilize the services of WELLS FARGO, CROSSLAND and VILLAGE [Abstract] for plaintiffs to purchase a home from Seller Defendants.

Plaintiffs failure to accurately cite their own complaint is troubling, to say the least. The fact that this paragraph includes no allegation of discrimination, contrary to plaintiffs' assertion in their Memorandum of Law, is conclusive here.

Even if plaintiffs had included in their complaint the conclusory allegation that they were pressured or coerced into using Wells Fargo because of their race, their claim would still fail. "Disparate treatment analysis . . . involves differential treatment of similarly situated persons or groups." *Huntington Branch, N.A.A.C.P. v. Town of Huntington*, 844 F.2d 926, 933 (2d Cir. 1988).[7] Plaintiffs fail to offer even the most basic allegation that they have been treated differently than their white counterparts.

It is significant that this is not a "failure to sell" or "failure to rent" case—the most common type of action brought under the FHA and other anti-housing discrimination statutes. Rather, plaintiffs allege that the terms and conditions of sale were different for them because of their ethnicity. Selling a home to a minority buyer is not discrimination. Selling a defective home to a minority buyer and concealing the defects through fraud is not discrimination. Selling a defective

---

[7] Plaintiffs do not allege a disparate impact. (Pls.' Mem. at 58.)

home to a minority buyer *because* he or she is a minority buyer is discrimination. Of critical importance in such a case is the existence of non-minority buyers who were not sold defective homes. Disparate treatment, after all, requires some disparity in treatment. *See Huntington Branch, N.A.A.C.P.*, *supra*. To survive a motion to dismiss, plaintiffs need not name such persons or produce evidence of their existence. Plaintiffs merely need to allege that such persons do, in fact, exist. Plaintiffs' failure to do so dooms their discrimination claims. In sum, plaintiffs' FHA claim would have survived had plaintiffs alleged that other home buyers, who are not members of the protected class, purchased homes from the defendants on more preferable terms. *See Powell v. American General Finance, Inc.*, 310 F. Supp. 2d 481, 489 (N.D.N.Y. 2004) (noting, in dismissing FHA claim, that plaintiff "did not allege how Defendants treated her differently from white applicants.")

Plaintiffs' disparate treatment claim is further complicated by the fact that they may not have accurately identified the basis upon which at least some of the plaintiffs were allegedly discriminated against. The Amended Complaint contends that plaintiffs Vivek Maharaj, Gyanwattie Maharaj, Varma Maharaj, Prakash Droopad, Branmattie Droopad, Tageram Harkhu, Laldhur Harkhu, Sarnarine Seonarain, and Chandra Seonarian are black. (Am. Compl. ¶¶ 14, 17–18.) Defendants dispute this and claim that these defendants are of Indian descent. Plaintiffs apparently do not disagree with defendants' characterization and state only that these plaintiffs "deem themselves as 'black' based on their skin color" (Pls.' Mem. at 57). The truth of the matter aside, the court is troubled by counsel's inclusion of this language in the Amended Complaint, particularly given that persons of Indian descent can also be a protected class under the FHA Plaintiffs'

13

counsel's misrepresentation was both dishonest and unnecessary.[8]

The only case cited by plaintiffs in support of their FHA claim is *Matthews v. New Century Mortgage Corp.*, 185 F. Supp. 2d 874 (S.D. Ohio 2002). *Matthews* involved a practice that has become known as "reverse redlining." Reverse redlining occurs when "a lender unlawfully discriminates by extending credit to a neighborhood or class of people (typically living in the same neighborhood) on terms less favorable than would have been extended to people outside the particular class at issue." *Id*. at 866 (citing Frank Lopez, *Using the Fair Housing Act to Combat Predatory Lending*, 6 GEO. J. POV L. & POL'Y 73, 77 (1999)).[9]

> [T]o establish a *prima facie* case of [reverse redlining] discrimination . . . , the plaintiff must show: (1) that she is a member of a protected class; (2) that she applied for and was qualified for loans; (3) that the loans were given on grossly unfavorable terms; and (4) that the lender continues to provide loans to other applicants with similar qualifications, but on significantly more favorable terms. [citation omitted] In the alternative, if the plaintiff presents direct evidence that the lender intentionally targeted her for unfair loans on the basis of sex and marital status, the plaintiff need not also show that the lender makes loans on more favorable terms to others.

*Id*. at 886–87. As discussed above, plaintiffs have not alleged that they were treated any worse than similarly situated home buyers of other ethnic backgrounds, and therefore cannot meet the fourth

---

[8] Presumably, plaintiffs are concerned about the fact that the Dhanraj Defendants are also of Indian descent. Indeed, the Dhanraj Defendants make this very argument: that, because they are of the same ethnic group, they could not have discriminated against plaintiffs (at least those of Indian descent). While the fact that some of the plaintiffs are of the same ethnic background as the Dhanraj Defendants might have some bearing on the issue of discriminatory animus, the court rejects the notion that a person cannot, as a matter of law, discriminate against other individuals of the same ethnic group. As a general matter, anti-discrimination laws prohibit conduct *based on* the protected characteristic. The ethnicity of the alleged discriminator provides no exemption. *Durling v. Uddo and Assoc., Inc.*, 1993 WL 33645, at *2 n.6 ("To determine whether a claim can be maintained under federal anti-discrimination law, the court must look to the characteristics of the plaintiff, *see, e.g., St. Francis College v. Al-Khazraji*, 481 U.S. 604, 609–10 (1987), not the defendant. Nothing precludes an individual from discriminating against a group of which he is also a member.").

[9] Research has not revealed any reverse redlining cases in the Second Circuit. In addition, while reverse redlining generally applies only to lending institutions, the court will assume that plaintiffs can make out a case of reverse redlining discrimination if they can show discrimination with respect to the terms and conditions of their transactions with the Dhanraj Defendants.

14

element of a "reverse redlining" claim. A conclusory allegation that defendants discriminated against Plaintiffs because they are "minority buyers" is insufficient to state a cause of action under the FHA. *See U.S. v. Weisz*, 914 F. Supp. 1050, 1053 (S.D.N.Y. 1996) (holding that plaintiff's allegation that defendant engaged in conduct that "coerced, intimidated, threatened, and interfered" with neighboring residents' enjoyment of their dwelling "because of [their] religion" in violation of the FHA was entirely conclusory characterization of defendant resident's intent that was not binding on court for purposes of defendant's motion for judgment on pleadings.) Accordingly, plaintiffs' FHA claims are dismissed.[10]

B.    Plaintiffs' §§ 1981 and 1982 Claims

Plaintiffs have alleged discrimination in violation of 42 U.S.C. §§ 1981 and 1982, as well as the New York State Human Rights Law, 18 N.Y. EXEC. LAW § 296 *et seq.* ("NYSHRL"), and the New York City Administrative Code, § 8-107 *et seq.* ("NYCHRL").

"To state a claim under § 1981, the following must be alleged: '(1) the plaintiff is a member of racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (*i.e.,* make and enforce contracts, sue and be sued, give evidence, etc.).'" *Dove v. Fordham Univ.*, 56 F. Supp. 2d 330, 338 (S.D.N.Y. 1999) (quoting *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.,* 7 F.3d 1085, 1087–88 (2d Cir. 1993)). Similarly, "[t]o maintain an action under § 1982, a plaintiff must allege that she was [intentionally] deprived of a property right because of her race." *Harary v. Allstate Ins. Co.*, 983 F. Supp. 95 (E.D.N.Y. 1997) (citing *Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 436, 88 S. Ct. 2186, 2201, 20 L. Ed. 2d 1189 (1968)).

---

[10] Plaintiffs voluntarily withdrew their FHA claims against Castlewood Estates Inc. and Lodovick Development Corp.

Plaintiffs allege as follows: "It is alleged that the Dhanraj defendants operated a scheme and evidenced a pattern of building two family homes in Brooklyn and the Bronx, knowingly selling the two family homes to <u>minority home buyers</u>. It is alleged that prior to the sales of the homes to the plaintiffs, the Dhanraj defendants sold homes to <u>other minority individuals which commenced the pattern</u> of racketeering activity." Pls.' Mem. at 59 (emphasis in original)). Plaintiffs allege later "[t]hat the <u>minority home buyers were inexperienced in purchasing homes.</u>" (*Id*. at 61 (emphasis in original)).

At best, plaintiffs may have alleged that they were defrauded by the defendants and that they are minorities. However, drawing all reasonable inferences in plaintiffs favor, there is simply no allegation that plaintiffs were targeted *because* they were minorities. "In order to survive a motion to dismiss, 'the events of the intentional and purposeful discrimination, as well as the racial animus constituting the motivating factor for the defendant's actions must be specifically pleaded in the complaint.'" *Dove*, 56 F. Supp. 2d at 338 (quoting *Yusuf v. Vassar College*, 827 F. Supp. 952, 955 (S.D.N.Y. 1993), aff'd in part and vacated in part, 35 F.3d 709 (1994)). "Essential to an action under Section 1981 are allegations that the defendants' acts were purposefully discriminatory, and racially motivated." *Albert v. Carovano*, 851 F.2d 561, 571 (2d Cir. 1988) (internal citations omitted). Plaintiffs' failure to allege purposeful discrimination or animus is fatal to their sections 1981 and 1982 claims.

The only case cited by plaintiffs in support of their section 1981 and 1982 claims is *Clark v. Universal Builders, Inc.*, 409 F. Supp. 1274 (N.D. Ill. 1976). An examination of the allegations in *Clark* further underscores the fatal flaw in plaintiffs' discrimination claims. In *Clark*, "the Plaintiffs allege that the Defendants violated their civil rights by selling these homes to black people

at prices and terms which were discriminatory *in relationship to the prices and terms made available to white people purchasing homes in other areas of the metropolitan area.*" *Clark*, 409 F. Supp. at 1277 (emphasis added). Plaintiffs here have made no claim that the terms and conditions of the transactions at issue were discriminatory in relationship to terms made available to those outside the plaintiffs' class.

The court finds that plaintiffs have failed to state a claim under the Fair Housing Act and 42 U.S.C. §§ 1981 and 1982. Given the disposition of these federal claims as well as others in this matter, the court will leave it to the state court to decide what effect, if any, this court's rulings should have on plaintiffs' NYSHRL and NYCHRL claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.")

### C. §§ 1985 and 1986 Claims

> The four elements of a § 1985(3) claim are: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States. Furthermore, the conspiracy must also be motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.'

*Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087–88 (2d Cir. 1993) (internal citations omitted). "[A] § 1986 claim must be predicated on a valid § 1985 claim." *Id*. at 1088. For the same reasons discussed above, plaintiffs have failed to allege "some racial or perhaps otherwise class-based, invidious discriminatory animus" sufficient to state a claim under sections 1985 and

17

1986.

### D. Plaintiffs' ECOA Claims

The Equal Credit Opportunity Act ("ECOA") provides that "[e]ach creditor shall promptly furnish an applicant, upon written request by the applicant made within a reasonable period of time of the application, a copy of the appraisal report used in connection with the applicant's application for a loan that is or would have been secured by a lien on residential real property." 15 U.S.C. § 1691(e). Paragraph 343 of the Amended Complaint states "[u]pon information and belief, plaintiff Vivek Maharaj and Gyanwattie Maharaj made a request to defendant Wells Fargo Home Mortgage Inc. to produce a copy of the appraisal for their premises, and on May 1, 2003 via letter, defendant Wells Fargo Home Mortgage Inc. stated that they do not have a copy of the appraisal in their possession." In addition, paragraph 681 of the Amended Complaint states that "[p]laintiffs made written demand upon Defendants for an appraisal of their property and an appraisal report was not provided to plaintiffs."

The Dhanraj Defendants first argue that plaintiffs' ECOA claims are time-barred as to the Maharajs because the Maharajs closed on their home more than two years prior to the filing of the complaint. The ECOA has a two-year statute of limitations that begins to run on the date of the occurrence of the violation. 15 U.S.C. § 1691e(f). The violation, in this case, occurred on May 1, 2003—the date on which the creditor failed to provide the appraisal report. The Maharajs' ECOA claim is therefore timely. Defendants cite no case to support their contention that the ECOA claim accrued on the date plaintiffs closed on their home.

However, plaintiffs' ECOA claim is deficient in other regards. The ECOA prohibits discrimination "with respect to any aspect of a credit transaction" on the basis of, *inter alia*, "race,

18

color, religion, national origin, sex, or marital status." 15 U.S.C. § 1691(a). Plaintiffs have alleged only that the were not furnished with the appraisal report as required by statute. Plaintiffs make no allegation that defendants failure to furnish them with the appraisal report was the result of discrimination. Moreover, by its plain terms, section 1691(e) applies only to creditors. Plaintiffs do not allege which of the defendants are "creditors" within the meaning of the statute, nor do they allege that they requested the appraisal report "within a reasonable period of time of the [loan] application." Plaintiffs are required to allege both in order to be entitled to relief. Plaintiffs' ECOA claim is therefore dismissed.[11]

## III. Wells Fargo's Motions

Wells Fargo's motion to dismiss Count 6, alleging a violation of 18 U.S.C. § 1962(a), (b), and (c) against it and Crossland, is granted. Plaintiffs' civil RICO statement makes no mention of Wells Fargo and Crossland and provides no allegations of their participation in the predicate RICO acts.

## IV. Conclusion

At best, plaintiffs have a fraud case; not a RICO case or a Fair Housing Act case or even a discrimination case. Plaintiffs have made serious allegations, which, if true, detail an egregious fraud. But that is all they have done.

The dismissal of plaintiffs federal claims leaves this court without sufficient reason to retain jurisdiction over this case. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before

---

[11] The plain language of section 1691(e) notwithstanding, plaintiffs have cited no authority, and the court's research has revealed none, which indicates that a cause of action exists under the ECOA based on a creditor's failure to furnish an appraisal report. Given that plaintiff's ECOA claim is deficient in any event, the court need not determine whether a cause of action would have been stated under these circumstances.

19

trial, the balance of factors to be considered under the pendant jurisdiction doctrine-judicial economy, convenience, fairness and comity-will point toward declining jurisdiction over the remaining state-law claims.") Accordingly, the state law claims are dismissed without prejudice to their refiling in state court.

SO ORDERED

DATED:   Brooklyn, New York
         September 14, 2005

_____/s/_____
DORA L. IRIZARRY
United States District Judge